Our next case is DSS, Inc. v. Seoul Semiconductor Co., Ltd., 22-1372. The board's decision in the underlying IPR relied incorrectly on plain construction of several terms in the claims of the 119th Act. Correcting the construction of any one of these would change the outcome of the IPR. The first and most glaring error in the claim construction was for the term, layered phosphor particles. The board misapplied the law when it ignored the limitations of the specification requiring that the layer of phosphor particles be at least two particles thick. Do you agree that the figures are not to scale? Yes, it says so. There are two instances where the plain and ordinary meaning of a claim term can be departed from the limitation and limitations from the specification can be imported. They are when the patentee acts as its own lexicographer and when the specification disavows or disclaims the claim scope. Here the board improperly reviewed the patent for definitional terms. However, there is no indication that the patent was acting as its own lexicographer. Where does anywhere in the specification, is it explicit that the term requires at least two particles, it to be two particles thick? The specification specifically says that it must be multiple, multiple particles. I get that. You made that and you made that argument below, but tell me specifically, your construction, I mean, as a district judge, when it's extraordinarily unusual to have a patent holder want me to add stuff. And so when they do want me to add stuff, I usually suspect it's because there's an issue with validity. I may not always be right, but that's the way I see it. Here, I'm trying to figure out exactly why you would want a layer of phosphor particles to have to have at least two particles thick. And I would think you would know just where in the specification that is. Well, as I was saying, it says that the layers must be many particles thick. So many particles implies that it's more than one. So that's at least two. The reason for this is that as the light, the blue light, in the example of a white LED, the blue light hits the phosphor particles, which turn it to yellow light and that's perceived as white light. So to have it two particles thick makes it more consistent as white light. But you could have claimed that. You could have had that in your claim. That's true. So the surrounding language also sparks the claim scope. The sentences before the disavowal states that the drugs are not to scale and show layers of relatively large phosphor particles. Just so that I'm making sure my notes are in this, what's your best portion spec for what you're continuing as a disavowal? The paragraph on page 98 of the appendix, column 5, paragraph starting at line 14. Okay, so your point to appendix page 98, column 5, lines 14 through 19 to say that that's some form of disavowal? Yes. It specifically says it is to be understood that the phosphor particles are actually uniform layers constructed from many small particles and the layers are many particles thick. It is to be understood. So they're saying that it has to be at least two particles. But is that really a clear and unmistakable disavowal? I believe it is. It's to be understood. What else are they saying? They're telling you that this is how it is. Additionally, there are other indications that the patentee intended to disavow layers of particles less than at least two particles thick. For example, the figures show layers of particles at least two particles thick, which taken with the disclaimer that the figures show particles with fewer layers indicates that the two particles is the lower limit of the thickness of the layers of particles. Similarly, the 119 patent in the paragraph starting in column 3, line 65 on appendix page 97 describes the option of a phosphor layer being composed of multiple sub-layers of phosphor particles. Even though this is optional language, it still requires there to be multiple layers and each one has to be, even if each sub-layer is one particle thick with multiple layers they must be the same. But you just said it was optional language. You just, I think the language says can be, so that's not a requirement if it's optional. It's an optional construction of how the layers are made, but it still says that it's optionally, the layer is made of optionally sub-layers and whether or not those layers are one or two particles thick, there are many sub-layers, so they have, the total has to be at least two particles thick. And your argument today rises and falls on that particular point? No, that's our main argument, but we have other arguments that there is other construction that the board got wrong that would also require them to, would make the, if not. Is your position if any of the four, if we find that any of the four were not to be affirmed, it would change the outcome? Any of the four constructions? Yes. Yes, that's correct. I mean, it's not cumulative, it's. No, the two layers does affect some of them, but not all of them, and they are all individually enough to say that the board got the construction wrong. Would it be correct to say that you abandoned your obviousness challenges? No, I don't think we did. We, in the briefing below, we mentioned them briefly by saying that the combination of references couldn't have. You argued those below? We briefly stated that the combination of references could not obviate the claims because the main reference did not anticipate the claims as shown by the board. If I could shift over to the claim term, phosphor particles covering said dye in direct contact, therewith, can you explain why it seems like your construction, proposed construction, abandoned anything to do with the conformal layer? Would you address that? No, we agree that it still needs to be conformal. Conformal just means that it covers the entire, it conforms to the whole shape of the device, not just the LED. But the layer needs to be at least two particles thick and in direct contact with the LED itself, as stated in the claims, the plain meaning of the claim. It just conforms to the rest of the device. But it's, from my reading, it's the conformal layer that needs to be in direct contact. The conformal layer of particles. Not that it has to be. Your deal is the bottom layer of particulars is in direct contact with the dye. But when I read claim one, it says it's the conformal layer of the phosphor particles conforming said dye and in direct contact. Yes, that's correct. So there's nothing in the claims that say that the conformal layer has to be anything other than the particles. And the particles are also, it's not atoms. It's not molecules. It's particles. They could attach other things to them to make up the particle. It does not just have to be phosphors. Did anyone ask for a construction of what a conformal layer meant? We agreed on that. We at least agreed on the term conformal. Do you agree that if we uphold the board's claim construction, we do not need to reach DSS's anticipation arguments? Yeah, we agree with that. That if the board is upheld, then the anticipation is correct. The third cause that the board got wrong was the layer of particles covering a portion of the sidewalls. The board was construed as having no limitation on the portion size or the extent of coverage. But the layer says that, referring back to before where it has to be two particles thick, so must the particles covering the sidewalls. And since it's a cup-shaped sidewalls with slopes going upwards, the phosphor particles must also follow the slope of the particles upwards. When I looked at the entire figure, it didn't really conform with what you... You kind of truncated it to show that it was going up like that. But the entire figure isn't... I don't think it supports... I don't think it supports it. Explain to me why I'm wrong. The figures show that the phosphor particles extend above the bottom layer. If you look at, for example, figure two, even the arrow points to... 35 points to the phosphor particles extending above the portion where the... The flat portion of the base of the device. What appendix cage are you on? I'm sorry, 93. Can you mention which figure? Figure two. It's conformed with these two. The fourth error in clean construction was for the cause the layer comprising a residue of a slurry of said phosphor particles in the volatile solvent. Such residue comprising a portion of said slurry that remains when a portion of the volatile solvent is removed. The board found that DSS agreed with Sol's narrow clean construction and applied that. However, the board appears to have been confused about what DSS did and did not agree to. The portion of DSS's patent owner's response cited by the board only states that DSS agreed with Sol regarding the terms conformal and substantially uniform thickness. However, on the same page, DSS specifically disagreed with Sol's narrower clean construction and provided its own, which was ignored by the board. So, if we start with the first one, you start with layer, the phosphor particles, and we determine that the PTAB got that one right, does it eliminate your arguments on the other ones? No, for example, this one does not rely on that at all, on claim two. Okay, because my understanding is, if I'm on the right one, said layer of phosphor particles, is that the one you're on? Sorry, if you're on said layer of phosphor particles covering a portion, is that the one you're on, or have you skipped to the next one? I'm on claim two. That's the layer of phosphor particles covering the light source, said phosphor particles covering at least a portion of said light, and then goes into describing what the layer comprises, comprising the rest of the story. That does not matter whether or not it's... So, in that one, you didn't make an argument that it had to have at least two particles? We have made that argument, but it does not depend on that. Okay, that was really helpful, thank you. You want to save the rest of your time? Sure, thank you. Counselor? Good morning, your honors. May it please the court, my name is Itay Lahav of Radulescu LLP, representing at police. I want to address the question of the relationship between all these arguments. There were some questions about that. I think it's extremely clear from the appellate briefing, putting aside the record below, that the way it's been argued is, in order to find at least the second and third issues, meaning that the phosphor particles have to touch the dye, or that the phosphor particles have to rise above the dye on the sidewalls, you need to agree with appellant that the layer has to be two particles thick. If you look at page 29 of the opening brief, it's clear that the reason why there can even be a bottom layer is because there's an assumption that the layer is at least two particles thick. Otherwise, their construction doesn't make any sense, and it specifically relies on winning the first argument. And very similarly, having the phosphor particles rise above the dye, so they say, is because you can't tell whether it has a uniform thickness or a uniform characteristic. If it's merely sitting on the bottom, it has to rise up at least two particles thick. So they've specifically tied the second and third arguments to the first. I think for all the reasons that were discussed during counsel's presentation, there's no basis for importing a limitation of at least two particle thick layers into the claim. I'll also respond to Kelsey's argument. There was a clear disavowal. Yes, in two respects. Number one, there is none. It's hard to point to an absence. Obviously, the part at the end of the specification is we see in lots of patents right at the end before the claims saying, look, we're not limited to all the embodiments here, and the figures are all nearly exemplary. That's what they're pointing to. It is just the opposite of what a disavowal or a disclaimer would be. But I also want to say that the word disavowal came up for the first time on reply in this court. They argued lexicography below. They argued lexicography in their opening brief. Now, they're twins in a sense, but it's actually one is saying this is something, and the other is saying this isn't something. And if you look at their opening brief, they say this statement explicitly defines the structure. And below, appendix 1085 in their patent owner response, the inventors clearly define in their layer. They say definition, and the board took them at their word and analyzed the question as one of lexicography. It's only in the reply brief where all of a sudden we see disavowal. Now, I don't think it makes an ultimate difference. I'm just saying it's been a little bit of shifting sands as we've put in our brief, and there's a bit of a short treatise at the end of their reply brief on waiver. I don't think we need to reach any of those issues, although I'm happy to address them. Do you disagree with opposing counsel that if we find in your favor with respect to layer phosphor particles that it doesn't essentially resolve all of them? If you find for us with respect to layer. If we inform the PTAB's construction for layer phosphor particles that the PTAB gave, would it take care of all of them? It would, and let me address that last part because I addressed the first three arguments, but I didn't explain why it addressed for the fourth. Although, Your Honor and Judge Albright, you hit on it in your question. Because they actually didn't put forth a construction for residue, despite counsel's argument, if you look at the record, there's a reference to earlier argumentation about the claim term of the layer. And then there's the agreement to conformal and uniformity. So there's nothing left there. So they can't have it both ways. Either they waive the argument that's not there, or it depends on the layer argument, and then it all rises and falls on the first issue. There's a lot new, and I can respond to it in the reply. Frankly, we think this is a very, very straightforward case for affirmance. I'm happy to take any questions, but I'm happy to not spend any more time and see the rest of my time. I'm going to ask a question. Please. Do you agree that if we just resolve the claim construction issues then, and I think I can ask you a similar question to what I asked opposing counsel, and we actually uphold them, as Judge Albright indicated, we wouldn't need to reach the anticipation arguments and or obviousness arguments? Yes, I agree. All right. Anything else? I thank your Honor for your time. Mr. Smith, we'll restore you back to three minutes, if you need that much. I just want to address two things. First of all, with the claim construction of the layer of phosphor particles touching the, in direct contact with the dye, the only reason that we have added in the claim construction that it needs to be the bottom layer of particles touching the dye is to make it have sense throughout the continuity through the claims. If you find that there does not need to be two-particle thickness, then all the particles above the LED touching the dye would be acceptable as well. Secondly, we did address the residue of the layer in our patent owner's opening brief at the PTAB. On appendix page 1090, we specifically say that a specific kind of phosphor layer having characteristics taught by the 119 patent. The claims of the 119 patent are included in the 119 patent. So the characteristics are specifically taught by the 119 patent. And then below that, it says, moreover, in accordance with petitioner's alternative physical construction for the purpose of claim two and its dependence, patent owner agrees that the phosphor layers must be also conformal and have substantial uniform thickness. So we only agreed with those two terms. We did not agree with their whole claim construction. There's no further questions? No. Thank you. Thank you. We thank all the parties for the arguments this morning. This court will now go into recess.